# No. 24-50762

## In the United States Court of Appeals for the Fifth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

KRISTIAN MALONE BELMONTE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Texas

**Brief of Defendant-Appellant**

MAUREEN SCOTT FRANCO
Federal Public Defender
Western District of Texas
300 Convent Street, Suite 2300
San Antonio, Texas 78205
Tel.: (210) 472-6700
Fax: (210) 472-4454

KRISTIN M. KIMMELMAN
Assistant Federal Public Defender

*Attorney for Defendant-Appellant*

## Certificate of Interested Persons

### UNITED STATES v. KRISTIAN MALONE BELMONTE, No. 24-50762

The undersigned counsel of record certifies that the persons having an interest in the outcome of this case are those listed below:

1. **Kristian Malone Belmonte,** Defendant-Appellant;

2. **Margaret F. Leachman,** Acting U.S. Attorney;

3. **Jaime Esparza,** former U.S. Attorney;

4. **William F. Calve** and **Fidel Esparza, III,** Assistant U.S. Attorneys, who represented Plaintiff-Appellee in the district court;

5. **Maureen Scott Franco,** Federal Public Defender;

6. **Molly L. Roth,** Assistant Federal Public Defender, who represented Defendant-Appellant in the district court; and

7. **Kristin M. Kimmelman,** Assistant Federal Public Defender, who represents Defendant-Appellant in this Court.

This certificate is made so that the judges of this Court may evaluate possible disqualification or recusal.

s/ Kristin M. Kimmelman
KRISTIN M. KIMMELMAN
*Attorney for Defendant-Appellant*

i

## Statement Regarding Oral Argument

Belmonte requests oral argument. He argues that his conviction for receipt of a firearm while under felony indictment, in violation of 18 U.S.C. § 922(n), violates the Second Amendment as applied to him.[1] Argument would allow the parties to answer questions the Court may have about the facts or law relevant to this case.

---

[1] Belmonte also challenges § 922(n) as facially unconstitutional but acknowledges that issue is foreclosed by *United States v. Quiroz*, 125 F.4th 713 (2025). Belmonte raises it to preserve for further review.

## Table of Contents

Certificate of Interested Persons ..................................................... i

Statement Regarding Oral Argument .............................................. ii

Table of Authorities ..................................................................... v

Subject Matter and Appellate Jurisdiction ..................................... 1

Issues Presented for Review .......................................................... 2

Statement of the Case .................................................................. 3

Summary of the Arguments .......................................................... 6

Standard of Review ...................................................................... 8

Arguments and Authorities ........................................................... 9

I.   Section 922(n), as applied to Belmonte, violates the Second
     Amendment. ......................................................................... 9

     A.  The legal framework for Second Amendment challenges
         as announced in *Bruen*, clarified in *Rahimi*, and applied
         to § 922(n) in *Quiroz*. ..................................................... 9

     B.  Section 922(n) violates the Second Amendment as
         applied to Belmonte because the government cannot
         show a longstanding history of disarming someone with
         a criminal history analogous to his. .................................. 18

         1.  Belmonte and his conduct—receipt of a firearm—are
             covered by the Second Amendment .............................. 18

         2.  No historical tradition of pretrial detention for a
             robbery indictee like Belmonte. .................................. 19

     C.  Belmonte's § 922(n) conviction is not rendered
         constitutional simply because he was serving a sentence
         when he received and possessed the firearms. ................... 22

II. Section 922(n) facially violates the Second Amendment. (Foreclosed.)............................................................... 28

Conclusion................................................................... 32

Certificate of Compliance with Type-Volume Limit..................... 33

# Table of Authorities

**Cases**

*Ball v. United States,*
470 U.S. 856 (1985)..................................................... 18

*City of Los Angeles v. Patel,*
576 U.S. 409 (2015) ............................................... 27, 28

*District of Columbia v. Heller,*
554 U.S. 570 (2008) ................................................. 9, 19

*Lange v. California,*
594 U.S. 295 (2021) .................................................... 15

*McDonald v. City of Chicago,*
561 U.S. 742 (2010) ..................................................... 9

*New York State Rifle & Pistol Association, Inc. v. Bruen,*
597 U.S. 1 (2022) ...............................................*passim*

*Nivelo Cardenas v. Garland,*
70 F.4th 232 (5th Cir. 2023) ....................................... 24

*Reese v. Bureau of Alcohol, Tobacco, Firearms, & Explosives,*
127 F.4th 583 (5th Cir. 2025)............................... 30, 31

*United States v. Austin,*
125 F.4th 688 (5th Cir. 2025)...................................... 24

*United States v. Bullock,*
123 F.4th 183 (5th Cir. 2024)...................................... 16

*United States v. Connelly,*
117 F.4th 269 (5th Cir. 2024)................................. 14, 19

*United States v. Contreras,*
125 F.4th 725 (5th Cir. 2025)...................................... 17

*United States v. Darrington,*
351 F.3d 632 (5th Cir. 2003) ...................................... 10

*United States v. Diaz,*
  116 F.4th 458 (5th Cir. 2024)................................................*passim*

*United States v. Giglio,*
  126 F.4th 1039 (5th Cir. 2025)............................................*passim*

*United States v. Goins,*
  118 F.4th 794 (6th Cir. 2024)..................................17, 26, 27, 28

*United States v. Mondragon-Santiago,*
  564 F.3d 357 (5th Cir. 2009) ..................................................... 23

*United States v. Moore,*
  111 F.4th 266 (3d Cir. 2024),
  *cert. pending,* No. 24-968.................................................*passim*

*United States v. Posada,*
  670 F. Supp. 3d 402 (W.D. Tex. 2023) ....................................... 19

*United States v. Quiroz,*
  125 F.4th 713 (2025) ........................................................*passim*

*United States v. Rahimi,*
  602 U.S. 680 (2024) .........................................................*passim*

*United States v. Salerno,*
  481 U.S. 739 (1987) ................................................................... 8

*United States v. Schnur,*
  __ F.4th __, No. 23-60621,
  2025 WL 914341 (5th Cir. Mar. 26, 2025)........................... 17, 22

*Worth v. Jacobson,*
  108 F.4th 677 (8th Cir. 2024)................................................... 31

**Constitutional Provisions**

U.S. Const. amend. II .............................................................*passim*

**Statutes**

18 U.S.C. § 3231........................................................................ 1

18 U.S.C. § 3742(a) ........................................................................ 1

18 U.S.C. § 922(g)(1) ..............................................................*passim*

18 U.S.C. § 922(g)(3) .................................................................... 17

18 U.S.C. § 922(g)(8) .................................................................... 19

18 U.S.C. § 922(g)(8)(C)(i) ..................................................10, 11, 12

18 U.S.C. § 922(n) ...................................................................*passim*

28 U.S.C. § 1291............................................................................ 1

2d Cong. Ch. 7, 1 Stat. 237 (1792) ................................................ 21

Crimes Act, 1 Cong. Ch. 9, 1 Stat. 112 (1790) .............................. 21

Judiciary Act of 1789, 1 Stat. 73, Sec. 33 ..................................... 22

Tex. Crim. Proc. Ann. art. 42A.101(a) ......................................... 24

Tex. Crim. Proc. Ann. art. 42A.111(a) .......................................... 24

**Rules**

Fed. R. App. P. 4(b)(1)(A)(i) ........................................................... 1

Fed. R. App. P. 32(a)(5) ................................................................ 33

Fed. R. App. P. 32(a)(6) ................................................................ 33

Fed. R. App. P. 32(a)(7)(B) ........................................................... 33

Fed. R. App. P. 32(f) ..................................................................... 33

**Other Authorities**

Blackstone, W.,
    *Commentaries on the Laws of England* (10th Ed. 1787) ........... 11

Brief for the United States,
*United States v. Rahimi,* No. 22-915 (U.S. Aug. 14, 2023) ........ 12

Docket,
*United States v. Diaz,* No. 24-6625 (U.S.) ................................. 18

Docket,
*United States v. Moore,* No. 24-968 (U.S.) ............................... 18

John N. Mitchell,
*Bail Reform and the Constitutionality of Pretrial Detention,*
55 Va. L. Rev. 1223 (1969) ...................................................... 20

Kellen R. Funk & Sandra G. Mayson,
*Bail at the Founding,* 137 Harv. L. Rev. 1816 (2024) ............... 20

Petition for Writ of Certiorari,
*United States v. Moore,* No. 24-968 (U.S.) ............................... 27

**Subject Matter and Appellate Jurisdiction**

**1. Subject Matter Jurisdiction in the District Court.** This case arose from the prosecution of alleged offenses against the laws of the United States. The district court had jurisdiction of this case under 18 U.S.C. § 3231.

**2. Jurisdiction in the Court of Appeals.** This is a direct appeal from a final decision of the United States District Court for the Western District of Texas entering a judgment of criminal conviction and sentence. This Court has jurisdiction of the appeal under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

A criminal defendant who wishes to appeal a district court judgment must file a notice of appeal in the district court within 14 days after the judgment's entry. Fed. R. App. P. 4(b)(1)(A)(i). Belmonte's judgment was entered on September 23, 2024. ROA.12–13. He filed a timely notice of appeal on September 24, 2024. ROA.13, 254–56.

1

## Issues Presented for Review

1.  Does 18 U.S.C. § 922(n) violate the Second Amendment as applied to Belmonte, who was under indictment for robbery?

2.  Does § 922(n) violate the Second Amendment facially? (Foreclosed.)

## Statement of the Case

Belmonte was convicted of receiving firearms while under felony indictment for robbery in violation of 18 U.S.C. § 922(n). He argues § 922(n) is unconstitutional as applied to him and asks the Court to vacate his convictions.

1.  In May 2020, police officers received a tip that narcotics and firearms were illegally being transported in a 2011 BMW. ROA.317–18. Officers stopped the car, which Belmonte was driving, and found a Kel-Tec CMR-30 firearm between the seat and the center console. ROA.318. Separately, in July 2020, officers conducted a traffic stop on a car in which Belmonte was a passenger. ROA.319. Officers discovered a Sig Sauer 365 9mm pistol on Belmonte's person. ROA.319.

Officers later learned that Belmonte had been indicted by a Texas grand jury for robbery on September 12, 2018. ROA.319. He was placed on deferred adjudication probation for six years in 2019 and had not yet completed that deferred adjudication term. ROA.319. Officers determined that both firearms were purchased after Belmonte's robbery indictment. ROA.319.

2.  Belmonte was indicted in two counts alleging illegal receipt of a firearm by a person under felony indictment, to wit: robbery. ROA.23–24; *see* § 922(n).

3.  Belmonte moved to dismiss the indictment, arguing that § 922(n) is unconstitutional under the Second Amendment, both facially and as applied to him, under the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). ROA.128–42. The district court denied Belmonte's motion, explaining "judges are simply not historians and historians seldom agree on history." ROA.159. The court deferred to "the Fifth Circuit and ultimately the United States Supreme Court to decide upon the constitutionality of the statute at issue." ROA.159.

4.  Belmonte pleaded guilty to the indictment without a plea agreement. ROA.227, 231, 283–84, 317. He admitted that he was indicted for robbery in Bexar County, Texas, in 2018; was placed on deferred adjudication for six years in 2019; and had not yet completed that term of deferred adjudication. ROA.294. He also admitted that he received the two firearms, which had traveled in interstate and foreign commerce, after he was indicted for robbery. ROA.295–97.

5. The district court sentenced Belmonte to concurrent terms of 27 months' imprisonment and three years' supervised release. ROA.245–46, 311.

Belmonte appealed. ROA.254–56.

## Summary of the Arguments

### I. Section 922(n), as applied to Belmonte, violates the Second Amendment.

Belmonte's convictions should be reversed because 18 U.S.C. § 922(n) violates the Second Amendment as applied to him. Under the framework established by *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), § 922(n) is presumptively unconstitutional because Belmonte is part of "the people" and the challenged conduct—possession of a firearm—falls within the plain text of the Second Amendment. The government cannot carry its heavy burden of demonstrating that the Nation has a longstanding tradition of prohibiting a person indicted for robbery from receiving a firearm.

### II. Section 922(n) facially violates the Second Amendment. (Foreclosed.)

Belmonte preserves for further review his argument, foreclosed by *United States v. Quiroz*, 125 F.4th 713, 715 (2025), that § 922(n) facially violates the Second Amendment. The statute impacts the core Second Amendment right to possess a firearm for self-defense. That right belongs to "the people" under the Constitution, including persons accused of any crime that is punishable by more than one year of imprisonment. And the government cannot meet its burden

6

to show that § 922(n) is consistent with the Nation's historical tradition of firearm regulation because there is no relevant historical evidence of prohibiting firearm receipt while under felony indictment.

## Standard of Review

The Court reviews preserved constitutional challenges to a statute *de novo*. *United States v. Quiroz*, 125 F.4th 713, 717 (5th Cir. 2025). "To sustain a facial challenge to a statute, 'the challenger must establish that no set of circumstances exists under which the statute would be valid.'" *United States v. Diaz*, 116 F.4th 458, 471 (5th Cir. 2024), *cert. pending* No. 24-6625 (U.S.) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

## Arguments and Authorities

### I. Section 922(n), as applied to Belmonte, violates the Second Amendment.

Section 922(n) is presumptively unconstitutional because firearm possession is protected by the plain text of the Second Amendment. The government cannot show a historical tradition of prohibiting firearm receipt for someone under a felony indictment for robbery. Thus, the district court's order denying Belmonte's motion to dismiss the indictment should be reversed and his two § 922(n) convictions vacated.

#### A. The legal framework for Second Amendment challenges as announced in Bruen, clarified in Rahimi, and applied to § 922(n) in Quiroz.

The Second Amendment to the United States Constitution mandates that a "well-regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held that the Second Amendment codifies an individual right to possess firearms, the "central component" of which is self-defense. *See Bruen*, 597 U.S. at 29 (citing *Heller* and *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010)). After *Heller*, this Court applied means-end

9

scrutiny to determine whether a firearm regulation violated the Second Amendment. *Diaz*, 116 F.4th at 465 (collecting cases). Under that means-end scrutiny test, the Court held that § 922(g)(1) did not violate the Second Amendment. *Id.* (citing *United States v. Darrington*, 351 F.3d 632 (5th Cir. 2003)).

In *Bruen*, the Supreme Court rejected the application of means-end scrutiny to the Second Amendment and instead focused solely on text and history. 597 U.S. at 19. *Bruen* thus abrogated this Court's prior precedent. *Diaz*, 116 F.4th at 465. Under *Bruen*'s framework, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." 597 U.S. at 17. "The burden then shifts to the Government to 'demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.'" *Diaz*, 116 F.4th at 465 (quoting *Bruen*, 597 U.S. at 17). Only then may a court conclude that the individual's conduct falls outside of the Second Amendment's "unqualified command." *Bruen*, 597 U.S. at 17.

In *United States v. Rahimi*, the Supreme Court clarified the *Bruen* test, ultimately holding that 18 U.S.C. § 922(g)(8)(C)(i)—which bars those subject to a domestic violence restraining order from possessing firearms—is constitutional facially and as applied

10

to Rahimi. 602 U.S. 680, 693 (2024). *Rahimi* focused its analysis on the historical tradition of firearm regulations, with particular emphasis on the regulations in place at the time of the founding and ratification. *Id.* at 693–98. Relying on the traditions of surety and going armed laws together,[2] the Court held there was a historical tradition of temporarily restricting a person's possession of firearms when an "individual poses a clear threat of physical violence to another." *Id.* at 698.

The Court drew a narrow purpose from the surety and going armed laws. Like § 922(g)(8)(C)(i), they "restrict[ ] gun use to mitigate demonstrated threats of physical violence." *Rahimi*, 602 U.S. at 698. How they burdened the right was also comparable to § 922(g)(8)(C)(i) because they were temporary restrictions and

---

[2] Surety laws "authorized magistrates to require individuals suspected of future misbehavior to post a bond." *Rahimi*, 602 U.S. at 695. They could be used in a variety of circumstances, including to address the "misuse of firearms." *Id*. at 696. While surety laws "provided a mechanism for preventing violence before it occurred," going armed laws addressed violence that had already happened. *Id.* at 697. For instance, going armed laws prohibited "riding or going armed, with dangerous or unusual weapons, to terrify the good people of the land." *Id.* (quoting 4 W. Blackstone, *Commentaries on the Laws of England* 149 (10th Ed. 1787) (cleaned up). They punished such disruptions to the "public order" that "almost necessarily" led "to actual violence" by forfeiture of the arms and imprisonment. *Id.* (cleaned up).

required "judicial determinations of whether a particular defendant likely would threaten or had threatened another with a weapon." *Id.* at 699. Thus, § 922(g)(8)(C)(i) is "'relevantly similar' to those founding era regimes in *both* why and how it burdens the Second Amendment right." *Id.* at 698 (emphasis added). The Court's historical analysis "settle[d] on just the right level of generality." *Id.* at 740 (Barrett, J., concurring).

The Supreme Court rejected the government's invitation to adopt a broader principle at a much higher level of generality. The government argued that history and tradition support the principle that "Congress may disarm persons who are not law-abiding, responsible citizens." Brief for the United States 12, *United States v. Rahimi*, No. 22-915 (U.S. Aug. 14, 2023). The Court was unconvinced. *Rahimi*, 602 U.S. at 701. The Court pointed out that "responsible" is a "vague term" and that it is "unclear what such a rule would entail." *Id.* The Court also explained that the government's proposed test did not "derive from [its] case law." *Id.*

After *Rahimi*, this Court addressed § 922(n)—the same statute at issue here—in *Quiroz*. The Court "assume[d] arguendo that the plain text of the Second Amendment covers" a felon indictee and his receipt of the firearm before turning to the historical analysis. 125

12

F.4th at 717. *Quiroz* held that § 922(n) is facially unconstitutional because it would not be unconstitutional in all its applications. *Id.* at 723. *Quiroz* reasoned that the historical tradition of pretrial detention is a relevantly similar analogue for § 922(n) because pretrial detention "resulted in the complete deprivation of the defendant's liberty and *ipso facto* restricted their access to weapons." *Id.* at 718. The Court held that § 922(n) burdens the right to armed self-defense "out of a concern for public safety," which was also a reason for pretrial detention at the founding. *Id.* Thus, "the modern *purpose* of § 922(n) is relevantly similar to the historical purpose of pretrial detention." *Id.* at 719 (emphasis added). *How* § 922(n) burdens the right to armed self-defense is also comparable to the founding-era system of pretrial detention because both are temporary, applying to the time between arrest or indictment and trial. *Id.*

Still, the Court recognized that "not everyone facing criminal charges was subject to pretrial detention at the founding." *Id.* Bail was commonly used to "release individuals not charged with a capital offense prior to trial." *Id.* Nevertheless, pretrial detention for offenses subject to capital punishment was prevalent enough at the founding to support that § 922(n) would be constitutional at least in some of its applications—when a defendant was indicted for an

13

offense that would have resulted in pretrial detention at the founding. *Id.* at 719–26.

*Quiroz* claimed its analysis is consistent with this Court's earlier ruling in *Diaz* that the felon-in-possession statute, 18 U.S.C. § 922(g)(1), is constitutional both facially and as applied to Diaz, who has a prior felony conviction for vehicle theft. *Quiroz*, 125 F.4th at 724. Before addressing history, *Diaz* held that a felon is among "the people" protected by the Second Amendment and that the "plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1)." 116 F.4th at 466–67. Thus, § 922(g)(1) is presumptively unconstitutional. *Id.*

The government then had the "heavy burden" of demonstrating "that the challenged regulation is relevantly similar to laws our tradition is understood to permit." *United States v. Connelly*, 117 F.4th 269, 274 (5th Cir. 2024) (quoting *Rahimi*, 602 U.S. at 692). For this inquiry, the Court held that only Diaz's prior felony convictions— not his misdemeanor convictions, concurrent conviction, or other conduct—were relevant to the historical analysis. *Diaz*, 116 F.4th at 467. Diaz's felony convictions were for evading arrest, possession of a firearm as a felon, and vehicle theft. *Id.* The government had

to "demonstrate that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to this." *Id.*

Unable to find laws targeting the disarmament of a felon like Diaz, the Court instead turned to "historical laws authorizing capital punishment and estate forfeiture" as consequences for certain felonies. *Diaz*, 116 at 467, 469 (reasoning the greater burden of capital punishment justifies the lesser burden of permanent disarmament). Addressing the "why" and "how" of the regulations, *Diaz* reasoned that the purpose of capital punishment ("deterrence, retribution, and penitence") is relevantly similar to the justification for § 922(g)(1) ("to deter violence and lawlessness"). *Id.* at 469. And the "how" is sufficiently similar as well because both "permanently punish[ ] offenders." *Id.* at 469.

Thus, *Diaz* held that § 922(g)(1) is constitutional as applied to modern-day felons who fit into a historical tradition of capital punishment or estate forfeiture. *Id.* at 470. *Diaz* recognized that most modern-day felonies would not have a capital-punishment analogue, as the felony category was "a good deal narrower" at ratification than today. *Id.* at 467 (quoting *Lange v. California*, 594 U.S. 295 (2021)). But *Diaz* determined that colonial era laws subjecting people convicted of theft and horse theft to capital punishment

15

"establish that our country has a historical tradition of severely punishing people like Diaz who have been convicted of theft." *Id.* at 468–69. Because Diaz's vehicle theft conviction "would have led to capital punishment or estate forfeiture," "[d]isarming Diaz fits within this tradition of serious and permanent punishment." *Id.* at 470. The Court thus held that § 922(g)(1) was constitutional as applied to Diaz and rejected the facial challenge. *Id.* at 471–72. *Diaz* left open the possibility of future as-applied challenges to § 922(g)(1) by defendants with different predicate convictions. *Id.* at 470 n.4.

After *Diaz*, the Court issued a short, published decision holding that § 922(g)(1) was constitutional as applied to a defendant with predicate felony convictions—aggravated assault with a deadly weapon and manslaughter—that "stemmed from the threat and commission of violence with a firearm." *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024). Disarming a person with convictions like Bullock fit into both the traditions of capital punishment for homicide and of disarmament upon a "going armed" conviction for menacing the public with firearms. *Id.* A recent decision, *United States v. Schnur*, extended *Bullock*'s reasoning to a prior aggravated battery conviction even though it did not involve

a firearm, reasoning that Schnur's prior "felony conviction for a 'crime of violence' indicates that he poses a threat to public safety and the orderly functioning of society." __ F.4th __, No. 23-60621, 2025 WL 914341, at *4 (5th Cir. Mar. 26, 2025). *Schnur* also held that *Diaz* foreclosed the Second Amendment challenge because Schnur had prior "theft-related felony convictions" for robbery and burglary. *Id.* at *5.

This Court also decided that "the government may disarm those who continue to serve sentences for felony convictions." *United States v. Giglio*, 126 F.4th 1039, 1044 (5th Cir. 2025) (citing *United States v. Moore*, 111 F.4th 266 (3d Cir. 2024), *cert. pending,* No. 24-968, and *United States v. Goins*, 118 F.4th 794 (6th Cir. 2024)). Because Giglio, at the time of his arrest, was serving a term of supervised release for a prior felony conviction, this Court held that the application of § 922(g)(1) to him did not violate the Second Amendment. *Id.* Another panel similarly held that the history of disarming people while they completed their sentences, together with history disarming intoxicated people given the defendant's prior 18 U.S.C. § 922(g)(3) conviction, supported the application of § 922(g)(1) to that defendant. *United States v. Contreras*, 125 F.4th 725, 732–33 (5th Cir. 2025).

17

Several petitions for writs of certiorari are pending that challenge the constitutionality of § 922(g)(1). *See, e.g.*, Docket, *United States v. Diaz,* No. 24-6625 (U.S.); Docket, *United States v. Moore,* No. 24-968 (U.S.).

## B. Section 922(n) violates the Second Amendment as applied to Belmonte because the government cannot show a longstanding history of disarming someone with a criminal history analogous to his.

Section 922(n) is unconstitutional as applied to Belmonte. His conduct is covered by the Second Amendment, and the government cannot show "that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to [his]." *Diaz*, 116 F.4th at 467.

### 1. Belmonte and his conduct—receipt of a firearm—are covered by the Second Amendment.

The *Bruen* framework first asks whether "the Second Amendment's plain text covers an individual's conduct." 597 U.S. at 17. Just as a felon's possession of a firearm is covered by the Second Amendment, *Diaz*, 116 F.4th at 466–67, an indictee's receipt of a firearm is also covered. "[P]roof of illegal receipt of a firearm necessarily includes proof of illegal possession of that weapon." *Ball v. United States*, 470 U.S. 856, 862 (1985); *see United States v. Posada,*

670 F. Supp. 3d 402, 407 (W.D. Tex. 2023). And "[t]he plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1), as it does with that of § 922(g)(8)"—possession of a firearm. *Diaz*, 116 F.4th at 467.

Furthermore, just as a felon is "among 'the people' protected by the Second Amendment, *Diaz*, 116 F.4th at 466, so too is someone merely indicted but not yet convicted of a felony. The Second Amendment "extends to 'the people,' and that that term unambiguously refers to all members of the political community, not an unspecified subset." *Id.* (quoting *Rahimi*, 602 U.S. at 752 (Thomas, J., dissenting) (quoting *Heller*, 554 U.S. at 580)). Thus, § 922(n) is presumptively unconstitutional, and the government has the "heavy burden" of demonstrating "that the challenged regulation is relevantly similar to laws our tradition is understood to permit." *Connelly*, 117 F.4th at 274 (quoting *Rahimi*, 602 U.S. at 692); *see Quiroz*, 125 F.4th at 717.

### 2. No historical tradition of pretrial detention for a robbery indictee like Belmonte.

Under *Quiroz*, and consistent with *Diaz*, the government must present evidence of a historical tradition of detaining pretrial someone indicted for an offense like Belmonte. *Quiroz*, 125 F.4th at 724;

*Diaz*, 116 F.4th at 468–72. The government presented no such evidence below. *See* ROA.152. *Quiroz* recognized that certain jurisdictions required pretrial detention for capital or serious offenses at the founding. 125 F.4th at 719–22. This practice was certainly not uniform. *Id.* About half the Nation instead required *bail* and only allowed for discretionary detention for capital offenses. Kellen R. Funk & Sandra G. Mayson, *Bail at the Founding*, 137 Harv. L. Rev. 1816, 1843 (2024). The question is thus whether a robbery indictment like Belmonte's would have subjected him to pretrial detention at the founding. The answer is no.

Since the government has not presented any pertinent historical evidence, Belmonte addresses the historical evidence presented in *Quiroz*. *Quiroz* relied almost exclusively on a summary chart of bail and capital offenses at the founding. 125 F.4th at 724–25 (citing John N. Mitchell, *Bail Reform and the Constitutionality of Pretrial Detention*, 55 Va. L. Rev. 1223, 1226–28 & nn.17, 22 (1969)). According to the chart, in 1791, robbery was a capital offense in Connecticut, Delaware, Massachusetts, New Hampshire, New York, and Rhode Island. Mitchell, *Bail Reform* 1227–28 n.22. Of those six states, only Delaware, New Hampshire, and Rhode Island required pretrial detention for robbery defendants. *Id.* at 1226 & n.17. That

20

three states required detention of those accused of robbery is hardly sufficient to show a tradition of disarming someone indicted for robbery. *See Bruen*, 597 U.S. at 46 ("doubt[ing] that three colonial regulations could suffice to show a tradition of public-carry regulation").

This evidence is insufficient to show that Belmonte's felony indictment mean he fits within the "historical tradition of permanently punishing certain offenders *who … would have been [subject to mandatory pretrial detention] at the time of the Founding." Diaz*, 116 F.4th at 469 (emphasis added). Indeed, the First Congress recognized only a select few felonies as capital, including treason, murder, certain piracy and maritime offenses (e.g., robbery upon the seas), prison break for capital offenders, and counterfeiting U.S. securities or certificates. *See* Crimes Act, 1 Cong. Ch. 9, 1 Stat. 112, 115 (1790). The Second Congress recognized an additional, specific kind of robbery as a capital offense—robbery of a mail carrier or the mail. 2d Cong. Ch. 7, 1 Stat. 237 (1792). Robbery outside of these specific contexts was not a capital crime. *See* Crimes Act, 1 Cong. Ch. 9, 1 Stat. 114 n.(a). And the federal government during the

21

founding era only permitted pretrial detention for capital offenses.[3] Judiciary Act of 1789, 1 Stat. 73, Sec. 33; *see Quiroz*, 125 F.4th at 720–21 (explaining that after indictment for the capital offense of treason, bail was unavailable).

Thus, the government has not carried its heavy burden of presenting analogous historical regulations with a sufficiently similar "how" and "why" to the burden § 922(n) imposes on Belmonte's Second Amendment rights based on his Texas robbery indictment.

### C. Belmonte's § 922(n) conviction is not rendered constitutional simply because he was serving a sentence when he received and possessed the firearms.

Nor is Belmonte's felon-in-possession conviction rendered constitutional because of the circumstance that he was on deferred

---

[3] *Schnur* broadly interprets *Diaz* as holding that all theft-related offenses are capital offenses despite the lack of historical support for that proposition. *See Schnur*, 2025 WL 914341, at *5; *Diaz*, 116 F.4th at 468 (citing one case of a thief being sentenced to death in Massachusetts in the 1600's and a 1788 New York law that imposed capital punishment for theft only for repeat offenses). But the question for § 922(n) is different. For § 922(n) under *Quiroz*, the historical record must support a tradition of *pretrial detention*. 125 F.4th at 723. Proof of an offense being subject to capital punishment is not enough. *See id.* at 724–25 (examining whether jurisdictions imposed mandatory pretrial detention upon a capital-offense indictment).

adjudication when he received and possessed firearms. To be sure, *Giglio* could suggest the opposite conclusion. 126 F.4th at 1044. But *Giglio* does not dictate that outcome here for two reasons.

*First, Giglio* applies to people serving *post-conviction* sentences, not someone like Belmonte who was on deferred adjudication probation. 126 F.4th at 1043–44. *Giglio* and the cases upon which it relies concluded that "the government may disarm those who continue to serve sentences *for felony convictions.*" *Id.* (emphasis added); *see Moore,* 111 F.4th at 271 ("Convicts could be required to forfeit their weapons and were prevented from reacquiring arms until they had finished serving their sentences."). This tradition—disarmament as part of a sentence after a *conviction*—is different than deferred adjudication probation, which applies *before* a conviction is entered.

"Under Texas law, deferred adjudication probation is neither a conviction nor a sentence." *United States v. Mondragon-Santiago,* 564 F.3d 357, 368 n.9 (5th Cir. 2009). Rather, "after receiving a plea of guilty or nolo contendere, hearing the evidence, and finding that it substantiates the defendant's guilt," the court can "defer further proceedings without entering an adjudication of guilt and place the defendant on deferred adjudication community supervision." Tex.

Crim. Proc. Ann. art. 42A.101(a). If the defendant successfully completes deferred adjudication, no conviction is entered. Tex. Crim. Proc. Ann. art. 42A.111(a). The government has not advanced evidence of a historical tradition relevantly similar to disarmament during deferred adjudication apart from its reliance on pretrial detention and surety laws, both of which fail for reasons explained in Section I.B.2.

*Second*, even if the Court determines deferred adjudication is relevantly similar to the tradition of disarmament while serving a sentence, that tradition is not an application of § 922(n)—which prohibits receipt of a firearm based on a felony *indictment. Giglio*'s suggestion that the circumstance of a sentence could support § 922(g)(1) conflicts with *Diaz* and is thus not binding. *See United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025) ("Under our rule of orderliness, when one panel decision disregards an earlier panel decision, we are duty-bound to follow the earlier one."); *Nivelo Cardenas v. Garland*, 70 F.4th 232, 242 n.7 (5th Cir. 2023) ("To the extent two panel decisions conflict, the earlier decision controls.").

In *Diaz*, this Court explained that, when evaluating a Second Amendment challenge to § 922(g)(1), a court can consider only "convictions that are 'punishable by imprisonment for a term exceeding

24

one year.'" 116 F.4th at 467 (quoting § 922(g)(1)). Past conduct that did not result in a conviction punishable by more than one year is "not relevant." *Id.* Even misconduct occurring at the same time as the charged gun possession is irrelevant because "that charge must … rely on previous history." *Id. Giglio*'s focus on supervised-release *status*, rather than the status triggering the prohibition on firearm possession—having a felony *conviction*, 126 F.4th at 1044, disregards the framework for evaluating an as-applied challenge to § 922(g)(1) set forth in *Diaz*, 116 F.4th at 467.

Under the *Diaz* framework, a court evaluating an as-applied challenge to § 922(g)(1) can consider only the event triggering the prohibition on firearm possession—the felony conviction. Section 922(g)(1) does not prohibit gun possession while on parole or during a term of supervised release. Thus, an individual's parole or supervised-release status is irrelevant to that analysis. The fact that a person may be violating the conditions of his parole or supervised release while possessing a gun is akin to any other misconduct a defendant may commit while possessing a gun. It is irrelevant to the analysis because a § 922(g)(1) charge must rely on "previous history" establishing the person's prohibited status, not concurrent conduct. *Diaz*, 116 F.4th at 467.

25

Belmonte's gun receipt might be a valid basis for revoking his deferred adjudication, *see* ROA.323 (noting motions to revoke probation were filed), but that is distinct from whether his deferred-adjudication status can support his disarmament and new conviction under § 922(n). It cannot. The challenged statute only encompasses—that is, applies to—the receipt of a firearm after a felony indictment.

*Giglio*'s reliance on out-of-circuit cases *Moore* and *Goins* is misplaced, as the approaches in those circuits directly conflict with the framework and analysis endorsed by this Court in *Diaz*. Again, *Diaz* instructs that, when evaluating whether there is a relevantly similar historical tradition of firearm regulation to § 922(g)(1), courts are to consider only "prior *convictions* that are 'punishable by imprisonment for a term exceeding one year.'" 116 F.4th at 467 (quoting § 922(g)(1)) (emphasis added). The Third and Sixth Circuits, by contrast, allow courts to consider a much wider universe of facts. In the Sixth Circuit, courts "may consider a defendant's entire criminal record—not just the specific felony underlying his § 922(g)(1) conviction." *Goins*, 118 F.4th at 804. Similarly, the Third Circuit has held that the circumstances giving rise to an as-applied

26

challenge "include facts beyond the predicate offenses alleged in the indictment." *Moore*, 111 F.4th at 273.

Fundamentally, those other circuits ask the wrong question. *See* Petition for Writ of Certiorari 18–21, *United States v. Moore*, No. 24-968 (U.S.).[4] The Third Circuit poses the question as: "[d]oes a convict completing his sentence on supervised release have a constitutional right to possess a firearm?" *Id.* at 267. Yet, Congress has not enacted a law banning gun possession by a parolee. If it had, the analysis in *Moore* and *Goins* may be relevant. But since § 922(g)(1) is not such a law, the question, as this Court has recognized and endorsed, is whether "the Nation has a longstanding tradition of disarming someone with a criminal history analogous to [the defendant's]." *Diaz*, 116 F.4th at 467.

The decisions in *Giglio*, *Moore*, and *Goins* are also in significant tension with Supreme Court guidance on as-applied challenges. As the Supreme Court has explained, an "application" of a statute considers only conduct that the challenged statute "actually authorizes or prohibits." *City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015). Situations that "do not involve actual applications of the statute"

---

[4] *Available at* https://www.supremecourt.gov/DocketPDF/24/24-968/351505/20250307160223749_24-%20Petition.pdf.

are "irrelevant" to the analysis. *Id.* at 417–19. By allowing courts to examine facts irrelevant to § 922(g)(1)'s prohibition, *Giglio*, *Moore*, and *Goins*, do not faithfully apply Supreme Court precedent. *Diaz* forecloses any argument that Belmonte's deferred-adjudication probation justifies his § 922(n) convictions.

* * *

For these reasons, this Court should hold that § 922(n), as applied to Belmonte, violates the Second Amendment. Accordingly, this Court should reverse the order denying the motion to dismiss and vacate Belmonte's § 922(n) conviction.

## II. Section 922(n) facially violates the Second Amendment. (Foreclosed.)

Section 922(n) prohibits Belmonte, a member of "the people" protected by the Second Amendment, from engaging in the conduct the Amendment sought to place beyond regulation: the mere possession (receipt) of a firearm. Because § 922(n) facially prohibits conduct protected by the Second Amendment, and the government cannot demonstrate that it fits within this Nation's tradition of firearm regulation, this Court should declare the prohibition facially unconstitutional. Quiroz recognizes this argument is foreclosed by *Quiroz* but raises it to preserve for further review.

*Quiroz* is out-of-step with the Supreme Court's Second Amendment framework in three critical ways. First, pretrial detention is not a firearm regulation relevant to the Second Amendment analysis. *Bruen* and *Rahimi* relied solely on historical traditions that targeted the misuse of firearms. *Rahimi*, 602 U.S. at 696; *Bruen*, 597 U.S. at 39–70. Yet *Quiroz* reaches to an analogue—pretrial detention—that does not target the misuse of firearms. 125 F.4th at 718–20.

Second, the historical surety and going armed laws relied upon in *Rahimi* do not support § 922(n) because they do not have a relatively similar purpose and burden. The "why" of surety and going armed laws was to restrict gun use when an individual "poses a clear threat of physical violence to another." *Rahimi*, 602 U.S. at 698. Section 922(n), by contrast, affects the inverse population: people who have been *released* pretrial and thus have *not* been determined to pose a significant threat to public safety. The "how" also is different. Surety and going armed laws restricted firearms access based on a judicial determination of past misuse of a firearm or future threat to physical safety. *Id.* at 699. By contrast, § 922(n) prohibits receipt of a firearm without any individualized determination of danger or risk of firearm misuse.

29

Third, even if the historical analogue relied upon in *Quiroz*—pretrial detention—is a proper firearm restriction to consider, it differs from § 922(n) in why and how it burdens the right to bear arms. People who were detained at the founding could not bear arms by virtue of being detained based on the classification of the indicted offense as capital or serious. *Quiroz*, 125 F.4th at 718 (claiming one purpose of pretrial detention is a concern for public safety). Pretrial detention was not targeted "to protect the public from the danger of illegal firearm use by indictees," a purpose of § 922(n). *Id.* The burden on the right to armed self-defense is also different. True, the duration is limited. *Id.* at 719. But someone who is detained has a diminished need for and right to a firearm for self-defense because he is in the government's care. *Cf. Reese v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 127 F.4th 583, 596 (5th Cir. 2025) ("Actions taken *in loco parentis* [by universities over student conduct] say little about the general scope of Constitutional rights and protections."). By contrast, someone who is at liberty relies on himself, not the government, for protection. Section 922(n) thus imposes a significantly greater burden on the right to armed self-defense than does pretrial detention.

Overall, *Quiroz* adopts a level of generality that is too high. As *Bruen* warned, "everything is similar in infinite ways to everything else," so the analysis must focus on "how and why the regulations burden a law-abiding citizen's right to armed self-defense." 597 U.S. at 29. The broad purpose of "public safety" operates at too high a level of generality to be a useful comparator. A "legislature's ability to deem a category of people dangerous based only on belief would subjugate the right to bear arms 'in public for self-defense' to 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *Worth v. Jacobson*, 108 F.4th 677, 694 (8th Cir. 2024) (quoting *Bruen*, 597 U.S. at 70) (holding, post-*Rahimi*, that Minnesota had not established a historic tradition restricting arms carrying to those who are more than 20 years old). *Id.* at 695–98.

Indeed, this Court rejected the government's argument that legislatures have the "broad[ ] authority to restrict arms-bearing by 'categories of persons' that 'present a special danger of misuse,'" noting that *Rahimi* only recognized such authority after a court found the defendant represented a credible threat to the physical safety of another. *Reese*, 127 F.4th at 598. Yet *Quiroz* accepts as a proper purpose for § 922(n) that a broad category of felon indictees cannot

31

be entrusted with a firearm absent a specific judicial finding that they pose any particular threat. 125 F.4th at 718. Such analysis impermissibly leads to the Second Amendment being a "regulatory blank check." *Bruen*, 597 U.S. at 30.

Because there is no relevantly similar historical analogue to § 922(n), it is unconstitutional on its face. The Court should thus vacate Belmonte's conviction.

## Conclusion

For the foregoing reasons, the Court should reverse the order denying Belmonte's motion to dismiss the indictment and vacate his § 922(n) conviction.

Respectfully submitted.

MAUREEN SCOTT FRANCO
Federal Public Defender

s/ Kristin M. Kimmelman
KRISTIN M. KIMMELMAN
Assistant Federal Public Defender
Western District of Texas
300 Convent Street, Suite 2300
San Antonio, Texas 78205
(210) 472-6700
(210) 472-4454 (Fax)

*Attorney for Defendant-Appellant*

**Certificate of Compliance with Type-Volume Limit**

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,753 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Century Schoolbook in body text and 13-point in footnotes.

s/ Kristin M. Kimmelman
KRISTIN M. KIMMELMAN
*Attorney for Defendant-Appellant*
Dated:  March 28, 2025
